UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

WALTER CRAWLEY,

        Plaintiff,

                                          Case No. 1:24-cv-384

v.

                                          Hon. Hala Y. Jarbou

HOPE COLLEGE, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim. The Court will dismiss Plaintiff's state law breach of contract claims without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Hope College, as well as Co-Directors Richard Ray and David Stubbs of the Hope-Western Prison Education Program, and Sara Dorer, Hope College's Equal Opportunity and Compliance Director.

A.  **Hope College's Disciplinary Procedures**

As background for his claims, Plaintiff provides information regarding the Hope College Student Handbook. According to Plaintiff, the Student Behavior Policies section sets forth "certain acts that constitute violations of the Handbook." (*Id.*, PageID.3.) For example, this section sets forth a policy regarding misuse of technology resources to include "unauthorized access/use to accounts, equipment; copyright violations; theft of data; creation, possession[,] or accessing of pornography or sexually offensive material, etc." (*Id.*, PageID.4.)

The Handbook also sets forth disciplinary procedures for students charged with an infraction. (*Id.*) The student "will receive notification to meet with a judicial officer," where the student is informed of the policy infraction and advised that he or she can resolve the matter "either via an administrative hearing or a formal hearing before the Student/Faculty Judicial Board." (*Id.*) If the matter is referred to a hearing, the "charged student shall be notified at least five business days prior to the date of hearing." (*Id.*, PageID.4–5.) A recording of the hearing is made, and the accused student has the right to have a faculty, staff, or student body member "present to serve as an advisor during the hearing." (*Id.*, PageID.5.) The parties "are entitled to view and receive copies of all submitted witness statements prior to the hearing." (*Id.*)

2

After the hearing, the Judicial Board issues "a written summary of testimony, findings of fact, and rationale for any recommendation." (*Id.*) If the Judicial Board recommends that the student be suspended or expelled, that recommendation is forwarded to the Dean of Students. (*Id.*) The Judicial Board "will inform the student of the decision by letter." (*Id.*) Students have the right to appeal the disciplinary decision to either the Vice President of Student Development and Dean of Students or to the Student Standing and Appeals Committee. (*Id.*, PageID.6.) The latter hears appeals from "disciplinary decisions that result[] in the suspension or expulsion of a student." (*Id.*)

### B.    Facts Underlying Plaintiff's Claims

Plaintiff alleges that as of September 19, 2023, he was "in his junior year at Hope College, majoring in Faith, Leadership[,] and Service." (Compl., ECF No. 1, PageID.7.) At the end of his junior year, Plaintiff "had a G.P.A. of 3.65 and was on the Dean's List every semester where he earned 12 credit hours." (*Id.*, PageID.8.)

On September 18, 2023, Plaintiff learned that the college computers had been removed for the prison program 'for possible violations of [the] policy governing technology usage." (*Id.*) The next day, Plaintiff approached Defendant Stubbs to speak to him regarding "Plaintiff's possible violations of the technology policy." (*Id.*) Defendant Stubbs was teaching a class at the time, so Plaintiff wrote him a statement addressing the alleged policy violations, noting that others were involved and that the violations were not done maliciously, and stipulating that Plaintiff would not use the college's computers during his remaining time as a student. (*Id.*)

On September 20, 2023, "Plaintiff was summarily separated from [the] College by prison administrators." (*Id.*) Plaintiff learned from other students that Defendant Stubbs "announced during class both his desire and efforts to reinstate Plaintiff." (*Id.*) However, those efforts were for naught. (*Id.*)

3

On October 10, 2023, nearly three weeks after the alleged violations, "Plaintiff received a minor misconduct report from prison officials for violating College policy." (*Id.*) Three days later, at an informal hearing, Plaintiff was found guilty, and prison officials sanctioned Plaintiff to ten days' loss of privileges (LOP). (*Id.*, PageID.8–9.)

On November 7, 2023, Plaintiff sent a letter to non-party Steven Maiullo, the college's Dean for Arts and Humanities, telling him of Plaintiff's "desire to complete his undergraduate program and that prison policy was no bar." (*Id.*, PageID.9.)

On November 13, 2023, Defendants Ray and Stubbs issued Plaintiff a formal Letter of Decision, stating that Plaintiff had violated the Handbook's provisions regarding technology misuse. (*Id.*) Defendants Ray and Stubbs stated that the Handbook indicated two options for sanctions—expulsion or suspension. (*Id.*) Plaintiff claims that this letter was the only "notice" he received from the college. (*Id.*) In the letter, Defendants Ray and Stubbs noted that Plaintiff would be suspended effective September 19, 2023, until February of 2026. (*Id.*, PageID.10.) Plaintiff alleges that the letter also stated that it was written "as a follow-up to MDOC's decision" as to Plaintiff's minor misconduct. (*Id.*, PageID.11.) Plaintiff contends that the letter bars him "from all and any [c]ollege related activity, including but not limited to, transfer of earned credits." (*Id.*, PageID.11.) The letter "also effectively bars Plaintiff from other degree programs during the suspension period." (*Id.*)

On November 18, 2023, Plaintiff appealed the Letter of Decision to the Student Standing and Appeals Committee. (*Id.*, PageID.11–12.) Plaintiff alleges, however, that this committee failed to conduct a hearing. (*Id.*, PageID.13.) On December 18, 2023, Plaintiff wrote to Defendant Dorer, "addressing multiple violations of due process and requesting that, as Equal Opportunity and Compliance Director, she bring [the] [c]ollege into compliance." (*Id.*, PageID.12.)

4

Based upon the foregoing, Plaintiff asserts violations of his Fourteenth Amendment due process and equal protection rights. (*Id.*, PageID.15.) He also asserts state law claims for breach of contract. (*Id.*, PageID.16.) Plaintiff seeks damages, as well as injunctive relief. (*Id.*, PageID.17.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

5

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1. Color of State Law

Plaintiff names Hope College, as well as Hope College employees Ray, Stubbs, and Dorer, as Defendants. As set forth above, to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and *must show that the deprivation was committed by a person acting under color of state law*. *West*, 487 U.S. at 48; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street*, 102 F.3d at 814. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170

6

(1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally Lugar*, 457 U.S. at 936–39 (discussing three tests).

Here, Plaintiff has not provided any allegations by which the Court could fairly attribute Defendants' conduct to the State. Plaintiff suggests that Defendants "acknowledge and have established a symbiotic relationship and close nexus between prison administrators and [the] [c]ollege." (Compl., ECF No. 1, PageID.11.) He contends that the decision by Defendants Ray and Stubbs to suspend Plaintiff "was coerced by state agents and that Defendants themselves acted under the color of state law." (*Id.*, PageID.10.) According to Plaintiff, this is evidenced by the fact that Defendant Stubbs previously commented that he wanted Plaintiff to be reinstated, but that the Letter of Decision issued by Defendants Ray and Stubbs alluded to Plaintiff's "guilty finding at an informal prisoner hearing" as the basis for the suspension decision. (*Id.*) Plaintiff argues that Defendants "allow[ed] the state to assume control of the [c]ollege's policies and operations." (*Id.*)

These assertions, however, are entirely conclusory. The services provided by Defendants, higher education for a select few prisoners, is not a service that is traditionally provided by the State. Nor is it a joint activity or subject to the State's coercive power. Although Plaintiff conclusorily suggests that Defendants were coerced to suspend Plaintiff by prison officials, the fact that Defendants Ray and Stubbs alluded to Plaintiff's prison misconduct proceedings in their Letter of Decision does not automatically lead to a conclusion that prison officials themselves coerced Defendants Ray and Stubbs to make the decision to suspend Plaintiff from the college. Plaintiff's conclusory statements are simply insufficient for the Court to infer that Defendants were acting under color of state law. For that reason alone, Plaintiff fails to set forth a § 1983 claim

7

against Defendants. Moreover, even if Plaintiff could sue Defendants under § 1983, his Fourteenth Amendment claims lack merit, as set forth below.

### 2. Fourteenth Amendment Due Process Claims

Plaintiff contends that Defendants violated his Fourteenth Amendment rights, "including but not limited to the right to procedural due process, by suspending Plaintiff without providing him a hearing . . ., by unreasonably denying a disciplinary hearing, and by subsequently suspending Plaintiff after an informal minor prison misconduct hearing." (Compl., ECF No. 1, PageID.15.)

#### a. Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the action in question "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v.*

8

*Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Here, Plaintiff does not allege that his suspension from the Hope College program affected the duration of his sentence, and as explained below, he has not shown that it imposes an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87.

As relevant to Plaintiff's claims, federal courts have consistently found that prisoners have no constitutionally protected interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause is not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (noting that "participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee"). Consequently, despite Plaintiff's assertions otherwise, the loss of privileges and opportunities associated with his enrollment in the Hope College program did not trigger a right to due process. Without such a protectible interest, Plaintiff cannot successfully claim he has been denied due process, because "process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Further, to the extent that Plaintiff alleges that he was deprived of property without due process of law (*see, e.g.*, ECF No. 1, PageID.15), this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-

9

deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed.[1]

---

[1] To the extent Plaintiff takes issue with the 10 days' LOP he received as a result of his prison minor misconduct hearing, the Court notes that none of the named Defendants were involved in that hearing, nor were they involved in imposing that sanction. In any event, Plaintiff's 10-day LOP sanction did not violate due process. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Where a stay longer than 30 days in segregation is not considered an atypical or significant hardship, *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), it defies logic to suggest that the lesser penalty of loss of privileges for that duration could be atypical or significant. Sixth Circuit authority bears

### b.      Substantive Due Process

Plaintiff's reference to the Fourteenth Amendment may also assert substantive due process claims. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that the Defendants engaged in conduct that "shocks the conscience." Accordingly, any purported Fourteenth Amendment substantive due process claims will be dismissed.

### 3.      Fourteenth Amendment Equal Protection Claims

Plaintiff also contends that Defendants violated his Fourteenth Amendment equal protection rights by "declining to institute disciplinary proceedings against Anthony Raby and Larry Cowen—similarly situated students—both of whom were found guilty of a more serious class of violation than Plaintiff." (Compl., ECF No. 1, PageID.15.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show

---

that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest").

that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, however, Plaintiff fails to allege any facts to suggest that Defendants intentionally treated him differently from other inmates. Moreover, Plaintiff's allegations of discriminatory treatment are wholly conclusory. He provides no details regarding how he himself allegedly violated the college's policy regarding technology use, nor does he provide any details regarding how inmates Raby and Cowen allegedly violated the policy. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Accordingly, for the reasons set forth above, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### B. State Law Breach of Contract Claims

As noted *supra*, Plaintiff also asserts state law breach of contract claims against Defendant Hope College. (Compl., ECF No. 1, PageID.16.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law or MDOC policy therefore fail to state a claim under § 1983.

12

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the Court has dismissed all of Plaintiff's federal claims. Thus, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law breach of contract claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's

13

state law breach of contract claims without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: April 30, 2024 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE